**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x   NOT FOR PUBLICATION
In re:                                                     :
                                                           :
Nosson Sklar,                                              :   Chapter 7
                                                           :   Case No. 19-11740 (MG)
                                                           :
                         Debtor.                           :
------------------------------------------------------------x
                                                           :
Dulce Garcia,                                              :
                                                           :
                                                           :
                         Plaintiff,                        :
                                                           :   Adv. Proc. No. 20-01318 (MG)
            - against -                                    :
                                                           :
Nosson Sklar,                                              :
                                                           :
                         Defendant.                        :
------------------------------------------------------------x
```

**MEMORANDUM OPINION AND ORDER DENYING THE DEBTOR'S
RIGHT TO DISCHARGE PLAINTIFF'S CLAIM**

*A P P E A R A N C E S :*

DEREK SMITH LAW GROUP, PLLC
*Attorneys for the Plaintiff*
One Penn Plaza
Suite 4905
New York, New York 10119
By:   Alexander G. Cabeceiras, Esq.

LAW OFFICES OF GABRIEL DEL VIRGINIA
*Attorneys for the Debtor-Defendant*
30 Wall Street
12th Floor
New York, New York 10005
By:   Gabriel Del Virginia, Esq.

**MARTIN GLENN**
**United States Bankruptcy Judge**

The unusual facts in this case raise the issue whether Nosson Sklar ("Sklar" or the "Debtor") will be entitled to a discharge of any judgment that Dulce Garcia ("Garcia") obtains against Sklar in any new action she files against Sklar based on the same claims that she previously asserted against him. As explained below, the Court concludes that Sklar would not be entitled to a discharge of a judgment in favor of Garcia.

## I.  BACKGROUND

### A.  The First Bankruptcy Case, the Second Bankruptcy Case, and the Unenforceable Default Judgment

This opinion, entered following a trial held on December 15, 2021, is the result of a labyrinthine procedural entanglement that began when Sklar filed his first chapter 11 bankruptcy case *pro se* in this Court on August 29, 2017 (the "First Bankruptcy Case"). ("First Petition," Case No. 17-12394 (SCC), ECF Doc. # 1.)[1]

On November 16, 2017, while the First Bankruptcy Case was pending—in other words, while the automatic stay was in place—plaintiff Garcia filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against Sklar and others based on alleged misconduct by Sklar that occurred before he filed the First Petition (the "Underlying Action").[2] ("District Court Complaint," *Garcia v. The Comprehensive Center, LLC,*

---

[1]  For ease of reference, annexed to this opinion is a timeline of crucial events. Additionally, due to the number of different actions and dockets referred to, each ECF document is referred to with a leading modifier to delineate the matter. Docket entries from the main case, Case No. 19-11740 (MG), will be cited as "Main Case ECF Doc. # ." Docket entries from the adversary proceeding, 20-01318 (MG), will be cited as "AP ECF Doc. # ."

[2]  The complaint also named as defendants five business entities that Sklar managed, owned, and operated (collectively, the "Defendants"): Comprehensive Center, LLC; Comprehensive Staffing Solutions, LLC; Grand Street Medicine & Rehabilitation, P.C.; Comprehensive Evaluation Services, PT, OT, SLP, LMSW, Psychology, PLLC; and New York's Comprehensive Home Care Services, LLC. The complaint also named Victor Robbins, the acting human resources representative for the Debtor's business entities. Robbins was dismissed as a defendant for failure to prosecute. Comprehensive Center LLC filed a chapter 11 petition on May 15, 2019. (Case No. 19-11558

*et. al.*, 1:17-cv-08970 (JPO) (BCM), ECF Doc. # 1).[3] Sklar now admits that he was served with Garcia's District Court Complaint, but he did not respond to it. ("Trial Tr.," AP ECF Doc. # 27 at 34:25–35:1–3.) Neither Garcia nor her attorney knew about Sklar's First Bankruptcy Case when Garcia filed the District Court Complaint. Sklar did not list any claims by Garcia in the First Bankruptcy Case's schedules and Garcia received no notice of filing.

On August 16, 2018, while Sklar's First Bankruptcy Case was still pending, the District Court entered a default judgment opinion against Sklar. (Default Judgment Opinion at 11.) This was followed by an order on liability on August 22, 2018. (Liability Order.) The District Court referred the matter to a magistrate judge for a damages inquest. Before the damages inquest took place, Sklar's First Bankruptcy Case was dismissed on October 31, 2018. ("Dismissal Order," Case No. 17-12394 (SCC), ECF Doc. # 47.)

On May 29, 2019, Sklar filed a <u>second</u> chapter 11 bankruptcy case (the "Second Bankruptcy Case"), which remains pending. ("Second Petition," Main Case ECF Doc. # 1.) This time Sklar was represented by counsel—Narissa Joseph, Esq. The Second Bankruptcy Case was converted to a case under chapter 7 on August 27, 2019. ("Order Converting Case," Main Case ECF Doc. # 36.) The bar date for filing claims in the Second Bankruptcy Case was set for December 6, 2019 (the "Bar Date"). ("Notice of Possible Dividends," Main Case ECF Doc. # 41.) The deadline to object to a discharge was set for December 16, 2019 ("Deadline for a Discharge Complaint"). ("Notice of Chapter 7 Bankruptcy Case," Main Case ECF Doc. # 38.)

---

(MG), ECF Doc. # 1.) That case was dismissed by order dated March 23, 2020. (Case No. 19-11558 (MG), ECF Doc. # 23.) The Court does not address any issues concerning the judgment against Comprehensive Center LLC.

[3]    The District Court Complaint and several documents from the Underlying Action are attached to a lift stay motion (Main Case ECF Doc. # 85) including: Opinion and Order Granting in Part and Denying in Part Plaintiff's Motion for Default Judgment (the "Default Judgment Opinion," Main Case ECF Doc. # 85-4); Order Clarifying Defendants' Liability (the "Liability Order," Main Case ECF Doc. # 85-5); Report and Recommendation on Damages to the Hon. J. Paul Oetken (the "R&R," Main Case ECF Doc. # 85-6); and Order Adopting Report and Recommendation (the "Order Adopting R&R," Main Case ECF Doc. # 85-7).

2

Garcia was not scheduled as a creditor on the initial statement of financial affairs. ("SOFA," Main Case ECF Doc. # 23.) Neither Garcia nor her attorney received notice of the Bar Date or of the Deadline for a Discharge Complaint. On December 10, 2019, an amended statement of financial affairs was filed, which still did not list Garcia as a creditor. ("First Amended SOFA," Main Case ECF Doc. # 51.)

While the Second Bankruptcy Case has been pending, the magistrate judge in the Underlying Action conducted the damages inquest. On November 21, 2019, the magistrate judge issued a report and recommendation on the amount of damages against Sklar—a total of "$284,785.01, comprising $200,106.01 in compensatory damages, for economic losses ($25,106.01) and emotional distress ($175,000), $75,000 in punitive damages, $6,150 in attorneys' fees, and $3,529 in costs . . . ." (R&R at 23.) On March 24, 2020, the District Court adopted the R&R and entered judgment in the amounts recommended against Sklar. (Order Adopting R&R.) Neither the magistrate judge nor the district judge was aware of the Second Bankruptcy Case. Sometime thereafter, Garcia learned that Sklar was a debtor in a bankruptcy case. The question here is when did she learn of this?

On November 6, 2020, Garcia filed a claim in the Second Bankruptcy Case arising from the Default Judgment. (Main Case Claims Register # 13.) On November 13, 2020, Garcia commenced the adversary proceeding seeking to deny Sklar a discharge (the "Adversary Proceeding"). ("AP Complaint," AP ECF Doc. # 1.) The AP Complaint alleges that Garcia "was granted no notice of [Sklar's] bankruptcy proceedings whatsoever," and that Sklar "failed to properly notify [Garcia] of his underlying bankruptcy proceedings." (AP Complaint ¶¶ 16–17.) As stated above, the Debtor's SOFA and First Amended SOFA did not disclose the Underlying Action or list Garcia as a creditor. (Main Case ECF Doc. ## 25, 51.) On November

3

25, 2020, the Debtor filed a second amended statement of financial affairs disclosing the Underlying Action and Garcia's claim. ("Second Amended SOFA," Main Case ECF Doc. # 86 at 19.)

The obvious issue raised by the above—the filing of Garcia's District Court Complaint and the District Court's default judgment on liability, both while the automatic stay from Sklar's First Bankruptcy Case was in effect, and then the damages inquest, report and recommendation, and the District Court's judgment of damages against Sklar, while the automatic stay from the Second Bankruptcy Case was in effect—was whether any of the District Court's resulting orders are enforceable, and, if not, whether Garcia is still entitled to obtain an order from this Court denying Sklar a discharge from any liability imposed based on Garcia's claims.

On April 20, 2021, after briefing and argument, the Court issued a memorandum opinion and order concluding that Garcia must file a new action against Sklar in the District Court, and that any resulting judgment in Garcia's favor will not be dischargeable *if* Garcia did not have *notice or actual knowledge* of Sklar's Second Bankruptcy Case before the Bar Date—December 6, 2019. ("April 2021 Opinion," *Garcia v. Sklar*, 626 B.R. 750, 776 (Bankr. S.D.N.Y. 2021).) Therefore, the only issue at trial was whether Garcia had *notice or actual knowledge* of the Second Bankruptcy Case before December 6, 2019. Familiarity with the April 2021 Opinion is presumed.

### B. The April 2021 Opinion and the Amended Adversary Complaint

On April 20, 2021, this Court issued the April 2021 Opinion and held the following:

> (1) all of the proceedings and rulings in the Underlying Action are void against Sklar;
>
> (2) the automatic stay will be lifted to permit Garcia to start over again in the District Court;

4

>   (3) further proceedings in this Court are required to determine when Garcia had notice or actual knowledge of Sklar's bankruptcy;
>
>   (4) because Garcia's claims against Sklar include personal injury claims, and neither party has consented to adjudication of the claims in this Court, section 157(b)(5) requires that Garcia's non-bankruptcy law claims be tried in the District Court; and
>
>   (5) all the claims asserted in the denial of discharge adversary complaint must be dismissed—specifically, the claims asserted under sections 523(a)(11), 523(a)(19)(B)(i)–(iii), and 1328(f) are dismissed as inapplicable to this chapter 7 case, and the claims under sections 523(a)(6) and 727(a)(4)(A) are dismissed as untimely.

*Garcia*, 626 B.R. at 756. But Garcia was granted leave to amend the Adversary Proceeding to assert a claim for an exception to discharge under section 523(a)(3) of the Bankruptcy Code. *Id.*

On July 13, 2021, Garcia filed the amended complaint. (The "Amended AP Complaint," AP ECF Doc. # 19.) The Amended AP Complaint contains one count objecting to discharge pursuant to section 523(a)(3) of the Bankruptcy Code. (Amended AP Complaint at 4.) Garcia alleges that the Underlying Action against Sklar included claims for intentional torts. (*Id.* ¶¶ 5–6.) Garcia argues that Sklar's willful, intentional, and malicious behavior resulted in the damages award in the R&R. (*Id.* ¶ 11.) Garcia states that the Order Adopting R&R has become a final judgment because the time to appeal has lapsed. (*Id.* ¶¶ 12, 13.) Garcia's primary contention is that Sklar was made fully aware of the Underlying Action via being timely served and notified through his counsel of record in the Underlying Action. (*Id.* ¶ 14.) Garcia states that she was given no notice of Sklar's bankruptcy proceedings nor was she listed as a creditor pursuant to section 521(a)(1). (*Id.* ¶ 16.)

On December 10, 2021, the parties filed a joint pre-trial order. (The "Pre-Trial Order," AP ECF Doc. # 25.) The Pre-Trial Order included the parties witness lists: Garcia's witness list included: (i) Garcia and (ii) Sklar (Pre-Trial Order at 3); Sklar's witness list included (i) Narissa

5

A. Joseph ("Ms. Joseph"), Sklar's bankruptcy counsel who filed the Second Bankruptcy Case, and (ii) Barry R. Feerst ("Mr. Feerst" or "Feerst"), Sklar's former personal attorney. (*Id.*) At trial, all witnesses testified except for Mr. Feerst. Shortly before trial, Sklar's trial counsel notified the Court that Feerst would no longer be a witness. (Trial Tr. at 41:14–19.)

**C. The Trial**

On December 15, 2021, the trial was held. The trial transcript was filed on January 4, 2022. (*See* Trial Tr.) Below is a summary of relevant testimony from the three witnesses.

1. Examination of Dulce Garcia

On both direct and cross examination, Garcia testified that she first became aware of Sklar's Second Bankruptcy Case around the end of October or the beginning of November 2020. (Trial Tr. at 8:10–15; 13:24–25.) Garcia further testified that neither Sklar, nor any representative or agent of Sklar, had contacted her to notify her of Sklar's bankruptcy. (*Id.* at 8:24–25; 9:1–4.)

2. Examination of Narissa Joseph

On direct examination by Sklar's trial counsel, Ms. Joseph testified that Garcia was not listed as a creditor in the Second Bankruptcy Case. (*Id.* at 19:13–18.) Also, Sklar did not notify her of Garcia's Underlying Action against him in the District Court. (*Id.* at 19:20–25; 20:1.) She became aware of Garcia's lawsuit in January 2020 from a call from Garcia's counsel, Alex Cabeceiras. (*Id.* at 20:7–23.) Joseph testified that she told Garcia's counsel that she would speak to her client and that Garcia's counsel should send her any paperwork. (*Id.* at 20:24–25; 21:1.)

Ms. Joseph testified that on November 25, 2020, after Garcia's Adversary Proceeding was commenced, she filed an amended statement of financial affairs that listed the Underlying Action. (*Id.* at 21:5–10; *see also* Second Amended SOFA at 19.) When asked by the Court why

6

she waited until November 25, 2020, to file the Second Amended SOFA, she testified that she "didn't have any information" and that Sklar ignored her contact attempts to get that information. (Trial Tr. at 29:15–18; 31:19–25.) Ms. Joseph stated that she likely got the information about Garcia's lawsuit from the PACER docket which she then used to draft the Second Amended SOFA. (*Id.* at 31:8–13.)

On cross-examination, Ms. Joseph stated that she was not aware of any communications from Sklar to Garcia regarding the Second Bankruptcy Case and she never personally notified Garcia about the bankruptcy proceedings. (*Id.* at 22:9–17.) The Court finds it important that Ms. Joseph *did not testify* during her direct or cross-examination that she ever told Mr. Cabeceiras that Sklar was a debtor in a bankruptcy case.[4]

Ms. Joseph further testified on cross-examination that she was not sure when Garcia said she had learned of the bankruptcy other than sometime in 2020. (*Id.* at 23:22–24.) She further testified on cross-examination that it appears that Garcia and Garcia's counsel had knowledge of the bankruptcy proceeding sometime soon after March 2020. (*Id.* at 27:19–23.)

After cross-examination, the Court asked Ms. Joseph how Garcia's counsel knew that Ms. Joseph was Sklar's counsel. (*Id.* at 29:1–2.) Ms. Joseph stated that she could not remember. (*Id.* at 29:3–4.) The Court also asked Ms. Joseph if she had any communications with Sklar about the Underlying Action. (*Id.* at 30:2–6.) Ms. Joseph stated the following:

> I believe whenever we discussed any of his prior lawsuits or anything that was going on, what I remember Mr. Sklar was saying is that anything that he has, any lawsuit or any paperwork I believe

---

[4] On cross-examination, Ms. Joseph was questioned about a January 2, 2020 email she sent to Sklar about the telephone call she received from Garcia's lawyer. (*See* Trial Tr. at 24:24–25; 25:1–21.) The email is attached to Ms. Joseph's affidavit that was attached to Sklar's trial brief (ECF Doc. # 24, at 7–10). Ms. Joseph's affidavit and the email were used by Garcia's lawyer but not introduced into evidence during Joseph's cross-examination. The Court is not considering the email as evidence. In any event, the email does *not* state that Ms. Joseph told Garcia's lawyer that Sklar was a debtor in a bankruptcy case or that Garcia's lawyer made any statement about Sklar being a debtor in a bankruptcy case. (*See id.* at 10.)

7

> he had a prior attorney by the name of Barry Feerst and that's who I spoke to just in regards to any documents or anything, even [when] we filed the initial petition of what documents, [of] anything, he received, because I believe he was Mr. Sklar's prior counsel.

(*Id.* at 30:7–15.)

      3.  <u>Examination of Nosson Sklar</u>

On direct examination, Sklar testified that he became aware of Garcia's Underlying Action when he was served by Garcia in 2018. (*Id.* at 34:25; 35:1–3.) Sklar testified that he would go to his attorney, Mr. Feerst, any time he had a lawsuit. (*Id.* at 36:14–17.) Sklar testified that it was his understanding that Mr. Feerst called Garcia's counsel to notify them that he was in bankruptcy. (*Id.* at 37:8–15.) The Court asked Sklar if he had personally spoken to Garcia's counsel. (*Id.* at 37:16–17.) Sklar responded to this question twice. First, he started to say: "No, I was there when the attorney spoke on the . . . ," but was interrupted by his counsel. (*Id.* at 37:18–19.) When redirected by his counsel, Sklar stated: "No, I didn't personally speak to him. I had the attorney [Mr. Feerst] speak to him." (*Id.* at 37:22–23.)

On cross-examination, Sklar testified that Mr. Feerst was alive today. (*Id.* at 40:13–14.) When Garcia's counsel asked about Mr. Feerst's last known address, Sklar testified, "I believe he closed down his office, but we could get that to you." (*Id.* at 40:17–19.) The Court noted that Sklar's counsel had originally listed Feerst as a witness but subsequently notified the Court that he was being withdrawn without giving a reason. (*Id.* at 41:14–19.)

Based on the above testimony adduced at trial, the Court concludes that Garcia did not have notice or actual knowledge of the Debtor's Second Bankruptcy Case before the Bar Date or before the Deadline for a Discharge Complaint. Therefore, while Garcia must refile and prosecute her case in the District Court, any resulting judgment against Sklar is a non-

8

dischargeable claim pursuant to section 523(a)(3) of the Bankruptcy Code. *See Garcia*, 626 B.R. at 756.

## II. LEGAL STANDARD

### A. The Standard for Denying Discharge

Pursuant to section 727(b) of the Bankruptcy Code, a debtor is discharged from all its debts that arose before the order for relief, "except as provided in section 523." 11 U.S.C. § 727(b). Section 523(a)(3) of the Bankruptcy Code protects an unlisted creditor without notice or actual knowledge of a bankruptcy case against the discharge of its debts. Section 523 provides in relevant part:

> (a) A discharge under section 727 . . . does not discharge an individual debtor from any debt—
>
> (3) neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—
>
> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
>
> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request;

11 U.S.C. § 523(a)(3).

Section 523(a)(3) is concerned with protecting a creditor's right to receive a distribution through the filing of a timely proof of claim and a creditor's right to seek a determination of dischargeability of a debt under sections 523(a)(2), (a)(4) and (a)(6). COLLIERS ON BANKRUPTCY ¶ 523.09[1] (16th Ed. 2022).

9

The purpose behind the exception in section 523(a)(3)(B) is to ensure that a creditor is afforded an opportunity to be heard with respect to its claim prior to the claim being discharged. *See GAC Enters. v. Medaglia (In re Medaglia)*, 52 F.3d 451, 455 (2d Cir. 1995). "The fundamental requisite of due process of law is the opportunity to be heard," with "'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  A court's application of section 523(a)(3) to find that a creditor's complaint regarding dischargeability is untimely does not violate due process where the creditor had actual knowledge but no formal notice of the bankruptcy case.  *In re Medaglia*, 52 F.3d at 457.

As applied here, the effect of section 523(a)(3) is that if Garcia did not have notice or actual knowledge of the Second Bankruptcy Case before the Bar Date (December 6, 2019) and before the Deadline for a Discharge Complaint (December 16, 2019), then Garcia's claims against Sklar are not discharged regardless of whether the debts are of the kind specified in section 523(a)(2), (4) or (6).  *See Garcia*, 626 B.R. at 772–73.

As explained below, the Court finds that Garcia did not have notice or actual knowledge of Sklar's Second Bankruptcy Case before the later of these two dates, December 16, 2019, and, therefore, Garcia's claims are not discharged whatever the basis for the claims.  If Garcia files a new action against Sklar in the District Court based on the claims previously asserted in her prior action against Sklar and recovers a judgment against him, the judgment will be non-dischargeable even if it does not fall under sections 523(a)(2), (4) or (6).

### B. The Missing Witness Doctrine

In the Pre-Trial Order, Sklar's trial counsel listed Mr. Feerst, Sklar's former counsel, as a witness. (Pre-Trial Order at 3.)  Sklar's bankruptcy counsel, Ms. Joseph, testified at trial that she

10

spoke with Feerst about Sklar's prior lawsuits in which he was named as a defendant. (Transcript at 30:2–15.) However, since Ms. Joseph testified that she only learned of the Underlying Action sometime in 2020, the Court finds that Feerst never told her about Garcia's lawsuit. Sklar testified, with clearly hearsay testimony, that after being served with Garcia's lawsuit, Feerst "called Ms. Garcia's attorney and explained to him that I was in bankruptcy."[5] (*Id.* at 36:14–17.) If Feerst had testified that he spoke to Garcia's lawyer and told him that Sklar was "in bankruptcy," it would support a finding that Garcia (through her attorney) had actual knowledge of Sklar's bankruptcy case. The last-minute decision of Sklar's trial counsel to not call Feerst as a witness raises the issue whether the "missing witness doctrine" applies and creates a presumption that Feerst's testimony would be unfavorable to Sklar.

"The rule . . . is that, if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." *Graves v. United States*, 150 U.S. 118, 121 (1893). The "missing witness doctrine" only allows the factfinder "to give the strongest weight to the evidence already in the case in favor of the other side," and not to "base its verdict on what it speculates the absent witnesses would have testified to, in the absence of some direct evidence." *Redd v. Burge*, 589 F. Supp. 2d 367, 373 (S.D.N.Y. 2008) (citing *Felice v. Long Island R. Co.*, 426 F.2d 192, 195 n.2 (2d Cir. 1970) (Friendly J.)).

"Drawing an adverse inference against a party under the so called 'missing witness rule' requires that only one party has the ability to produce the witness." *In re Kalisch*, 413 B.R. 115, 131 (Bankr. S.D.N.Y. 2008). A witness is unavailable to one party in a litigation where "'the

---

[5] Having heard and observed (on Zoom) Sklar's direct and cross-examination, the Court finds that Sklar's hearsay testimony (to which no objection was made during trial) that Feerst called Garcia's attorney and explained that Sklar was in bankruptcy was not credible.

11

witness is physically available only to the opponent or . . . the witness has the type of relationship with the opposing party that practically renders his testimony unavailable to the moving party.'" *See Ranish v. Delta Air Lines, Inc.*, 89 F.3d 826 (2d Cir. 1995) (quoting *Oxman v. WLS–TV*, 12 F.3d 652, 661 (7th Cir.1993)). Federal courts have held that there should be "no adverse inference where an uncalled witness is equally available to both parties." *Satnick v. Nat'l R.R. Passenger Corp.*, No. 03 Civ. 4896 (RKE), 2005 WL 236493 * 2 (S.D.N.Y. Feb. 1, 2005) (citing *Kean v. Comm'r,* 469 F.2d 1183, 1188 (9th Cir. 1972) ("Where a potential witness is equally available to both parties, no inference should be drawn from the failure of a party to call such witness."). *Satnick*, 2005 WL 236493 *2 (citing *Rosa v. Blander*, 366 N.Y.S.2d 35, 37 (1975) ("The principle of equal availability is not applicable in a case where the witness, although equally accessible to both parties, is favorable to one party and unfavorable or hostile to the other.")).

To resolve the problem of equal availability, *United States v. Blakemore* is instructive as it notes that "legal, personal, or perhaps even social relationships between a prospective witness and one party" would pragmatically make the "testimony unavailable to the opposing party regardless of physical availability." 489 F.2d 193, 195 n.4 (6th Cir. 1973). "[A] court may find that a relationship between a party and a witness renders that witness 'unavailable.' This is true where the court draws a reasonable inference that the witness would naturally give testimony that favors one party because of that relationship." *In re Kalisch*, 413 B.R. 115, 132 (Bankr. S.D.N.Y. 2008) (citing *United States v. Christ*, 513 F.3d 762, 773 (7th Cir. 2008) (finding unavailability based on the relationship of employment by party); *Satnick v. Nat'l R.R. Passenger Corp.*, 2005 WL 236493 at *2 (finding unavailability because the missing witness was an expert witness listed to be called by the opposing party).)

12

### III. DISCUSSION

#### A. The Testimony Adduced at Trial Establishes that Garcia Did Not Have Notice or Actual Knowledge of the Debtor's Second Bankruptcy Case

If Garcia, as an unlisted creditor, did not have notice or actual knowledge of the Second Bankruptcy Case on or before the Bar Date and the Deadline for a Discharge Complaint, then the debt owed to her would not be dischargeable under section 523(a)(3). *Garcia*, 626 B.R. at 773, n.22 (citing *In re Cruz*, 254 B.R. 801, 805–10 (Bankr. S.D.N.Y. 2000)). Garcia filed the Adversary Proceeding well after December 16, 2019. Dismissing the Amended AP Complaint under section 523(a)(3) would not violate Garcia's due process rights if it were found that, despite the lack of formal notice, she had actual knowledge of the bankruptcy before December 16, 2019. *See In re Medaglia*, 52 F.3d at 457; *see also In re Candidus*, 327 B.R. 112 117 (Bankr. E.D.N.Y. 2005) ("Section 523(a)(3)(B) protects the right of an unscheduled creditor to obtain a determination of nondischargeability of intentional tort debts . . . ."). Garcia's Underlying Action concerns debts arising from intentional torts and therefore, her right to obtain a determination of nondischargeability will be protected if she lacked knowledge of Sklar's Second Bankruptcy Case. 11 U.S.C. § 523(a).

Ms. Joseph's testimony indicates that she did not initially list Garcia as a creditor for Sklar's Second Bankruptcy Case. (Trial Tr. at 19:13–18.) Notably, Garcia was only scheduled as a creditor in the Debtor's Second Amended SOFA on November 25, 2020, after Garcia filed her claim on November 6, 2020 and began the Adversary Proceeding on November 13, 2020, respectively. (Second Amended SOFA at 19.) By not scheduling Garcia as a creditor before the Bar Date as required by section 521(a), Sklar effectively denied himself the full measure of 'peace of mind' and denied Garcia due process. *See In re Gianopolous*, 584 B.R. 598, 605–06 (Bankr. S.D.N.Y. 2018) (quoting *In re Bachman*, 296 B.R. 596, 599 (Bankr. Conn. 2003) ("If the

debtor fails to schedule a creditor before the Bar Date, the debtor does not get the full measure of 'peace of mind.'"); *see also Lefkowitz v. Najjar (In re Najjar)*, No. 06-10895, 2007 Bankr. LEXIS 1678, *9–10 (Bankr. S.D.N.Y. May 11, 2007) (finding that a debtor's improper scheduling of a claim did not provide that creditor sufficient notice to permit a timely request to determine dischargeability of the claim).

Garcia, on both direct and cross-examination, in testimony which the Court finds credible, testified that she became aware of the Second Bankruptcy Case around the end of October or the beginning of November 2020. (Trial Tr. at 8:10–15; 13:24–25.) Ms. Joseph, in her testimony, provided inconsistent dates for when Garcia or her counsel learned of the Second Bankruptcy Case. However, all dates proffered by Ms. Joseph occurred in 2020 well after both the Bar Date of December 6, 2019, and the Deadline for a Discharge Complaint of December 16, 2019. (*Id.* at 23:22–24; 27:19–23.)

As discussed further below, Sklar did not refute this testimony but rather provided testimony that harmed his case. Therefore, based on the testimony adduced at trial, this Court finds that Garcia did not have actual knowledge of Sklar's Second Bankruptcy Case before the Bar Date or before the Deadline for a Discharge Complaint.

### B. The Missing Witness Doctrine Supports a Presumption that Feerst's Testimony Would Have Been Unfavorable to Sklar

In the Pre-Trial Order, Sklar's trial counsel listed two trial witnesses: Narissa Joseph and Barry Feerst. (Pre-Trial Order at 3.) Shortly before trial, Sklar's trial counsel informed the Court that Mr. Feerst would not be called as a witness. (Trial Tr. at 41:14–19.) Here, Sklar failed to produce the only witness who could have corroborated Sklar's hearsay assertion that Mr. Feerst had contacted Garcia's counsel and informed counsel about Sklar being in

14

bankruptcy. (Trial Tr. at 37:8–19.) As previously noted, the Court finds that Sklar's testimony was not credible.

Applying the "missing witness doctrine," the Court presumes that Feerst's testimony would have been detrimental to Sklar's case. *See Graves*, 150 U.S. at 121 ("[I]f a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that [the party] does not do it creates the presumption that the testimony, if produced, would be unfavorable.") The Court need not speculate why Sklar did not call Mr. Feerst as a witness. Testimony at trial indicates that Garcia and her counsel did not have Mr. Feerst's address and likely would not have had the practical ability to call him as a witness. (Trial Tr. at 40:17–19.)

Garcia's counsel could have subpoenaed Feerst despite Feerst being "physically available only to the opponent." *Ranish*, 89 F. 3d at 826 (citations omitted). However, given the attorney-client relationship between Sklar and Feerst, Feerst's testimony would have been "practically render[ed] unavailable" to Garcia. *Id.* As already explained, "a court may find that a relationship between a party and a witness renders that witness 'unavailable'" because that "witness would naturally give testimony that favors one party because of that relationship." *In re Kalisch*, 413 B.R. at 132 (citations omitted). The Sixth Circuit's decision in *United States v. Blakemore,* 489 F.2d at 195 n.4, noted that "legal, personal, or perhaps even social relationships between a prospective witness and one party" would pragmatically make the "testimony unavailable to the opposing party regardless of physical availability." The Court therefore presumes that calling Feerst as a witness was peculiarly within Sklar's power. Based on the above, the Court finds that Feerst's testimony would have been detrimental to Sklar's case and

15

could not have shown that Garcia was informed of the Second Bankruptcy Case before the Bar Date or before the Deadline for a Discharge Complaint.

### IV. CONCLUSION

Based on the testimony adduced at trial, the Court **CONCLUDES** that Garcia did not have notice or actual knowledge of Sklar's Second Bankruptcy Case before the Bar Date or the Deadline for a Discharge Complaint. Therefore, in the event that Garcia files an action against Sklar on the claims she previously asserted against him and recovers a judgment thereon, Garcia's claims against Sklar are **DETERMINED** to be non-dischargeable under section 523(a)(3) of the Bankruptcy Code. *See Garcia*, 626 B.R. at 756.

Dated:    January 27, 2022
         New York, New York

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge

16

# APPENDIX: TIMELINE

Events from the First and Second Bankruptcy Cases, including the Adversary Proceeding are in regular type. Events from the Underlying Action are in bold type.

| Event | Date |
| --- | --- |
| First Petition | August 29, 2017 |
| **District Court Complaint** | **November 16, 2017** |
| **Default Judgment Opinion** | **August 16, 2018** |
| **Liability Order** | **August 22, 2018** |
| Dismissal Order | October 31, 2018 |
| Second Petition | May 29, 2019 |
| Order Converting Case | August 27, 2019 |
| First Date Set for 341 Meeting | October 16, 2019 |
| **R&R** | **November 21, 2019** |
| Bar Date | December 6, 2019 |
| Deadline for a Discharge Complaint | December 16, 2019 |
| **Order Adopting R&R** | **March 24, 2020** |
| Motion Objecting to Discharge | November 6, 2020 |
| AP Complaint | November 13, 2020 |
| Second Amended SOFA | November 25, 2020 |
| April 2021 Opinion | April 20, 2021 |
| Amended AP Complaint | July 13, 2021 |
| Trial | December 15, 2021 |